1  LOUIS DEMAS SBN # 87286
   Attorney at Law
2  2713 E Street
   Sacramento, California 95816-3221
3  Telephone (916) 498-9055
   Facsimile: (916) 848-3624
4  Email: Ldemas@demaslaw.com

5  Attorney for Plaintiffs

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11 | Susan Hood, Chester McNabb, on behalf of | No.
   | themselves and all others similarly situated | CLASS ACTION COMPLAINT
12 | Plaintiffs, | Title II of Americans with Disabilities
   |  | Act, 42 U.S.C. § 12101 et seq.; Section 504
13 | v. | of the Rehabilitation Act of 1973, 29
   |  | U.S.C. § 794 et seq., the California Unruh Civil
14 | City of Sacramento, Sacramento County, | Rights Act ("Unruh Act"), Cal. Civ.
   | Defendants. | Code §§ 51-53; and the California Disabled Persons
15 |  | Act ("CDPA"), Cal. Civ. Code §§ 54-55.
   |  | (Class Action Allegation)
16

17

18

19

20      1. Plaintiffs Susan Hood and Chester McNabb (collectively, "Plaintiffs"), on behalf of

21 themselves and all other persons similarly situated, allege as follows:

22                                INTRODUCTION

23

24      2. Plaintiffs bring this lawsuit against Defendant City of Sacramento ("Defendant "City")

25 and Sacramento County ("Defendant County") to address their systemic failure to provide full

26 and equal access to its sidewalks to Plaintiffs and similarly situated persons with mobility

27 disabilities. For purposes of this Complaint, (Persons with mobility disabilities includes persons

28

   Class Action Disability Complaint        1

with ambulatory disabilities, visual disabilities, or any other disability for which the person requires ADA compliant sidewalks, facilities, services, or programs to move throughout the Defendant City and Defendant County).  Defendant City, and Defendant County, has failed and continues to fail to maintain its sidewalks clear of debris and tent encampments, which is necessary to make its sidewalks readily accessible to people with mobility disabilities. A substantial number of the Defendant City's, and Defendant County's, sidewalks—particularly those in the busiest business and active travel corridors—do not comply with applicable federal statutes and regulations because they are blocked by tent encampments and attendant debris (often including toxic and used hypodermic needles), and unleashed animals rendering the sidewalks inaccessible, dangerous, and unsanitary for people with mobility disabilities.

3. The Defendant City's, and Defendant County's, sidewalks are a fundamental public program, service, or activity that the Defendant City, and Defendant County, provide for the benefit of its residents and visitors. Unimpeded and readily accessible sidewalks are necessary to permit people with mobility disabilities to participate in all aspects of society independently, fully, and meaningfully, including employment, housing, education, transportation, public accommodations, and recreation, among others. Accordingly, readily accessible sidewalks are essential to realizing the integration mandate of disability non-discrimination laws, including the Americans with Disabilities Act of 1990 (the "ADA"), the Rehabilitation Act of 1973 (the "Rehabilitation Act"), the Unruh Civil Rights Act (Civ. Code, § 51, et seq.) and Disabled Persons Act (Civ. Code, §§ 54-55.3).

4. Plaintiffs are individuals with mobility disabilities. Plaintiffs bring this action on behalf of themselves and all persons with mobility disabilities who live, work, or travel, within the City and County of Sacramento, and who are being denied full and equal access to the Defendant

City's, and Defendant County's sidewalks, and are subjected to unlawful, dangerous, or hazardous conditions.

5. Federal disability access laws were enacted to provide persons with disabilities an equal opportunity to participate fully in civic life. *See* 42 U.S.C. § 12101(a)(7); 29 U.S.C. § 794(a) (Section 504 of the Rehabilitation Act ("Section 504")). Under the ADA and Section 504, a public entity's sidewalks, crosswalks, and paved paths—collectively referred to as a public entity's "sidewalks"—are a "service, program, or activity of the City and County within the meaning of Title II of the ADA." *LA Alliance for Human Rights v. County of Los Angeles*, 14 F.4th 947, 959 (9th Cir. 2021). As detailed below, the Defendant City, and Defendant County, has excluded and continues to exclude Plaintiffs and all other similarly situated persons with mobility disabilities from participation in, and the benefits of, the City's and County's sidewalk program, service, or `activity by failing to maintain the Defendant City's, and Defendant County's, sidewalks clear from tent encampments, dangers, and debris, thereby discriminating against persons with mobility disabilities.

6. The ADA and Section 504 mandate that a public entity operate each program, service, or activity so that the program, service, or activity, when viewed in its entirety, is readily accessible and usable by individuals with disabilities. 28 C.F.R. § 35.150(a), (b)(1); 45 C.F.R. § 84.22(a), (b). Where a person with a mobility disability "cannot traverse sidewalks [. . .] because of homeless encampments," a city can be required to clear the sidewalks "[t]o the extent the City is liable for the obstructions[.]" *LA Alliance*, 14 F.4th at 959.

7. The denial of meaningful, equal, and safe access to the Defendant City's, and Defendant County's, sidewalks for persons with mobility disabilities complained of in this Complaint is the direct result of the City's and County's policies, procedures, and practices with regard to sidewalks and unsheltered persons. The Defendant City, and Defendant County, has

failed to adopt or implement reasonable administrative methods, policies, and procedures for inspecting, clearing, and maintaining the sidewalks, as required by the ADA and the Rehabilitation Act.

8. Defendant City's, and Defendant County's, administrative methods, policies, and procedures, or lack thereof, discriminate against persons with disabilities by denying them access to the City's and County's sidewalks, as well as facilities in which the Defendant City's, and Defendant County's, programs, services, and activities are made available to the public.  The Defendant City's, and Defendant County's, sidewalks, when viewed in their entirety, are not readily accessible to and usable by persons with mobility disabilities due to the City's and County's failure to maintain clear sidewalks free of debris, dangers, and tent encampments.  The Defendant City's, and Defendant County's, most glaring violations are in some of the Defendant City's, and Defendant County's, busiest commercial and business corridors, and Defendant public transportation hubs, and pedestrian travel corridors.  The Defendant City's, and Defendant County's, failure to maintain compliant sidewalks greatly diminishes the ability of persons with mobility disabilities to conduct business, commerce, travel, and engage in social activity throughout the Defendant City and Defendant County.

9. The Defendant City, and Defendant County, has failed to comply with the ADA and Section 504 by allowing tent encampments and debris to block Defendant City's, and Defendant County's, sidewalks for over three years.  For over three years, the Defendant City, and Defendant County, has made compliance with the ADA and Section 504 a lower priority than other activities and projects, and expended funds, including discretionary activities and projects not mandated by law.  The Defendant City's, and Defendant County's, failure to prioritize compliance with the ADA and Section 504 constitutes a policy or practice that denies program access to, and discriminates against, persons with mobility disabilities.  This lawsuit seeks a court

order requiring the Defendant City, and Defendant County, to comply with these laws to provide people with mobility disabilities full and complete access to the Defendant City's, and Defendant County's, sidewalks, as required by federal and state laws.

10. Plaintiffs bring this action to remedy violations of Title II of the ADA, 42 U.S.C. § 12101, *et seq*., and its accompanying regulations, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*., and its accompanying regulations, and Disabled Persons Act (Civ. Code, §§ 54-55.3).

11. Plaintiffs seek injunctive relief pursuant to these statutes and an award of reasonable attorney fees, expenses, and costs under applicable law.

JURISDICTION AND VENUE

12. This is an action for injunctive relief brought pursuant to Title II of the ADA, 42 U.S.C. §§ 12101 to 12213, and Section 504, 29 U.S.C. § 794, *et seq*. to redress systemic civil rights violations against people with mobility disabilities by the Defendant City, and Defendant County.

13. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and Section 504.

14. This Court has jurisdiction to issue injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

15. Venue is proper in the Eastern District of California because the Defendant City, and Defendant County, resides in the Eastern District of California within the meaning of 28 U.S.C. § 1391, and because the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the Eastern District of California.

\

PARTIES

16. Plaintiff Susan Hood lives in the Arden Arcade neighborhood of Sacramento County, California and regularly travels throughout the Defendant County and Defendant City. Ms. Hood has a visual disability that limits her ability to walk and navigate without the assistance of her guide dog or a cane.  Ms. Hood is a "qualified person with a disability" and a person with a "disability" within the meaning of all applicable statutes and regulations, including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, and 29 U.S.C. § 705(20)(B).

17. Plaintiff Chester McNabb ("Mr. McNabb") lives in Central City of Sacramento.  Mr. McNabb has a mobility disability that substantially limits his ability to walk and requires the use of an electric scooter or a walker.  Mr. McNabb is a "qualified person with a disability" and a person with a "disability" within the meaning of all applicable statutes and regulations, including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, and 29 U.S.C. § 705(20)(B).

18. The Plaintiff class consists of all Sacramento residents with mobility disabilities who have used, use, or will use, the sidewalks in the Defendant City, and Defendant County, through the date of judgment in this action.

19. At all times relevant to this Complaint, Defendant City, and Defendant County, is and has been a public entity within the meaning of Title II of the ADA and has received federal financial assistance within the meaning of the Rehabilitation Act of 1973 sufficient to invoke its coverage.

20. The Defendant City, and Defendant County, is a local government entity with the responsibility of providing Plaintiffs and other persons with mobility disabilities with access to its public facilities, programs, services, and activities. The Defendant City, and Defendant County, is responsible for maintaining, repairing, and regulating its sidewalks.

FACTS APPLICABLE TO ALL CLAIMS

21. In the past several years, the unsheltered population of Sacramento has increased substantially. Since the onset of the COVID-19 Global Pandemic and the corresponding economic downturn, the number of such persons camping on the streets of the Defendant City, and Defendant County, has exponentially exploded.

22. While political pressure has mounted on Defendant City, and Defendant County, officials to address these issues, the Defendant City and Defendant County has taken only limited action to maintain its sidewalks clear from tent encampments and debris and, instead, prioritizes other public projects. Defendant City and Defendant County has compounded the problem by encouraging proliferation of tent encampments. Defendant City adopted an ordinance, in effect ceding a portion of City sidewalks for continued maintenance of tent encampments, debris, garbage, and other the dangers.

23. Defendants  City's and County's failure to curb and reasonably control the proliferation of tent encampments and accompanying debris has had, and continues to have, a particularly harmful impact on persons with mobility disabilities. Sacramento's mobility disabled population is frequently marginalized and relies on a functional governance to ensure their ability to effectively and safely navigate the Defendant City's, and Defendant County's, sidewalks, so that they may live their lives and meet their needs. The disabled population of the City of Sacramento is 11.8 per cent. The disabled population of the County of  Sacramento is 12.4 per cent. The mobility disabled are more likely than others to rely on ADA compliant sidewalks to use the Defendant City's, and Defendant County's, public amenities.

24. A great number of the tent encampments block the sidewalks and prevent persons with mobility disabilities from being able to use them. Additionally, the tent encampments typically contain attendant trash that pose additional health and safety threats.

25. The tent encampments in the two photographs, shown below, are of tent encampments under the overpass of California Highway 99 at E Street. The first photograph is of the northern side of the street facing east and the second is on the southern side take facing east. Both show entire sidewalks being blocked from use by persons with mobility disabilities. Similar tent encampments have blocked and are blocking sidewalk access to persons with disability at California Highway 99 underpasses up to, and including X Street. This E Street encampment was recently removed by the Defendant City prior to the filing of this complaint but the Defendant City has taken no steps to assure that a similar encampments will not return to the E Street underpass or for other tent encampments situated under California Highway 99.  The California Highway 99 underpasses are major business, school, and social travel corridors including for students attending Sutter Middle School.





26. The tent encampment in this photograph, shown below, completely blocked Defendant County's sidewalk. This tent encampment at 2820 Fulton Ave is  an obstacle to persons with mobility disabilities attempting to access business on a substantial business corridor.



27. The tent encampments shown in the above photographs are representative of numerous tent encampments throughout Defendant City, and Defendant County, that block access to sidewalks for persons with mobility disabilities.

28. Defendant City, and Defendant County, for its part, has failed to implement any consistent and reliable policy to clear and maintain the sidewalks such that all persons with mobility disabilities are able to use the sidewalks safely and effectively. Accordingly, the Defendant City, and Defendant County, has denied persons with disabilities readily accessible sidewalks.

EXPERIENCES OF THE NAMED PLAINTIFFS

Susan Hood

29. Ms. Hood is a 64-year-old  legally blind mobility disabled person. Before moving to Sacramento in 2017, Ms. Hood  was as a publicist in performing and visual arts, a freelance theater critic for Hartford Courant and for Hartford Advocate, and a freelance arts writer.  When Ms. Hood lost her vision, she was in independent degree program at Trinity college for adults returning to school. She was working on a Bachelor of Arts degree in Art History at Trinity College which ended once she became blind. Ms. Hood had a bioengineered mitral valve replacement. She was advised with the mitral valve replacement of the importance of being physically active and that walking is the best exercise.

30. Ms. Hood was paired with Geode, her guide dog by Guide Dogs for the Blind in late April 2019. Ms. Hood also uses a straight white cane for testing unknown terrain. Ms. Hood also uses the cane when going around obstacles on sidewalks such as cardboard and when gauging depth if required to step off a curb when tent encampments force her off a sidewalk. She also relies on her feet to sense obstacles. Geode and her guide dog work as a team with Geode changing postures for cues to Ms. Hood. Ms. Hood is not able to read street signs.

31. Ms. Hood lives in the Arden Arcade neighborhood of Sacramento, California. Ms. Hood frequently runs errands in her neighborhood and regularly travels to other parts of The City of Sacramento. Ms. Hood uses Defendant City's, and Defendant County's, sidewalks to do her errands and to access public transportation.

32. The tent encampments on the sidewalks have significantly diminished the ways she can move about her neighborhood, affecting her health and greatly elevating her fear for her safety.  Ms. Hood repeatedly has, and continues to, alter her routes to maneuver around tent encampments in the Arden Arcade neighborhood and in the City of Sacramento. Ms. Hood has had to leave the sidewalks and travel in streets used by fast moving vehicles because the sidewalks were  completely blocked by tent encampments. What was once were pleasurable walks for Ms. Hood have become frightening and dangerous.  Ms. Hood views the tent encampments as an unsafe condition and violation of the ADA that puts her and other people with mobility disabilities at risk of physical danger and harm, in addition to denying them equal access to public facilities.

33. Ms. Hood's ability to travel on partially blocked sidewalks is severely limited.  She requires more space because she is walking side by side with her guide dog Geode and needs to avoid, and adjust to, slippery conditions, debris, and snarling and lunging dogs.  Ms. Hood's difficulty in maneuvering obstructed sidewalks, when grocery shopping is compounded by her need pull a utility cart behind her on the right, with Geode guiding at left.

34. Ms. Hood wanted a guide dog in part because people are often uncomfortable around a white cane or do not understand what a straight white cane signifies, which is blindness. In her experience with Geode, people are generally friendlier because they are curious about a guide dog who responds to physical and vocal commands. Ms. Hood feels she and Geode are a perfect match as handler and guide, and as a team they share a deep trust and emotional bond. She

is greatly concerned that contaminated sidewalks, other debris, attacking dogs, and discarded

hypodermic needles could severely injure, or kill Geode. This would be a great personal loss to

Ms. Hood. Guide Dogs for the Blind has a long waiting list of approved applicants, so a minimum

six month wait for an appropriate match is typical.

35. In November 2022 Ms. Hood's ability to use Defendant County's Arden Arcade

sidewalk was severely compromised when Ms. Hood with her guide dog walked north on Fulton

Avenue and came upon tent encampment in front of Ganas Auto (2820 Fulton Ave) blocking the

entire sidewalk.   Photograph of tent Fulton Avenue tent encampment blockage follows.



1     Below is a map and diagram of the difficult path that Ms. Hood was forced to take to get around

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



26     the tent encampment obstacle. Ms. Hood and her guide dog got off the bus at the Department of

27     Human Services and proceeded north on Fulton Ave on the eastern sidewalk at evening.  It was

28

getting dark and vehicle traffic was heavy. With the heavy traffic, in this area people often drive into the parking lots and drive back out to get ahead of the traffic.  She was very fearful of getting hit by a car–due to the tent encampment blocking her route.  Ms. Hood was forced by the obstacles to maneuver around the parking lot and headed towards the McDonalds when she encountered another tent encampment.  She and her dog couldn't proceed further with ADA walkways being obstructed by a tent encampment.  Ms. Hood had to stop, turn right, go through the planter boxes in front of the McDonald's and then had to walk with her shoulder touching McDonalds' southern outside wall to gain access to ADA walkway that crosses the drive-through lanes. Ms. Hood then proceeded on the ADA pathway to the parking lot, turning left (North) along the sidewalk, across the walkway through the parking lot (east) and then left (north) along the Fabric Garden building to then go past Domino's Pizza and on along parallel to Marconi (east) to get to her home.  If unfamiliar with the area, Ms. Hood wouldn't have been able to navigate the route. This was a frightful and harrowing journey for Ms. Hood, and she is thankful she and Geode didn't get hit by a vehicle.

36. During the month of September, Ms. Hood made two trips to downtown Sacramento. One trip was for business near Cesar Chavez Plaza and the other trip was for a performance at the Convention Center.  On one of these trips, she got completely disoriented because she had to keep changing her route due to so many encampments in the area that were completely blocking the sidewalk.  When Ms. Hood travels to downtown Sacramento, she takes Light Rail to the 12th and I Station.  Once off the Light Rail it takes her a bit of time to get her bearings to adjust to spatial orientation.  Attempting to get to her destination within 2-3 blocks of the Light Rail station, she encountered tent encampments completely blocking the sidewalk requiring her to backtrack to her last point of crossing and make a new decision on what way to travel.  Her sense of direction was then disoriented.

37. Ms. Hood's worst downtown travel experience was her having to keep crossing streets, getting stopped midway by an encampment, retracing steps to get her bearings again. What would have been a few crossings to get to her destination became extremely untethered causing her to lose her sense of direction which caused her to be increasingly worried about her safety. Ms. Hood asked persons with a construction crew in the area for help in navigating, and she realized the offered directions would put her right on the Light Rail tracks. Instead, Ms. Hood waited until she heard someone walking near her to ask them for directions because she had no idea where she was. As a blind woman, if Ms. Hood's route gets confused, she needs to ask people for assistance, and her sense of direction gets muddled with multiple reroutes. These reroutes can make it hard for her to reacclimate to her surroundings, causing her to doubt if she's headed in the right direction or is on the right street. Ms. Hood was extremely frightened on these travels.

Chester McNabb

38. Chester McNabb is a 66-year-old resident of the City of Sacramento. Mr. McNabb was diagnosed with learning disabilities since birth. He can't read, write or spell well. Mr. McNabb was enrolled in special education classes since 1st grade. His education ended during the eleventh grade. He is a mobility disabled person crippled by rheumatoid arthritis and osteoarthritis. Mr. McNabb worked until he was 28 when he suffered a major medical incident and has been barely able to walk since then. He has received government Supplemental Security Income (SSI) and Social Security Disability Insurance (SSDI) since he was 28.

39. McNabb was periodically homeless since 1986, often living in cars. He began living at Pioneer House on S Street in Sacramento in 2017.

40. Around 1996 he got his first wheelchair. Three months ago he wrenched his back and now can barely move around his apartment. His ability to walk being extremely limited, he was,

and is, totally dependent on his electric scooter to travel outside of his apartment on the sidewalks of the City and County of Sacramento and to use public transportation.

41. Mr. McNabb uses Light Rail to travel for medical appointments received from the University of California medical system. From Pioneer House he begins his Light Rail travel beginning at O and 8th Streets to get to the 48th Street Light Rail station. Mr. McNabb's travel to the Light Rail station is often impeded by tent encampments blocking sidewalks causing him to reroute his travel to go around the tent encampment obstructions. Mr. McNabb has been intimidated into changing his travel routes by persons within the sidewalk tent encampments acting violent or having mental episodes and by hostile and lunging dogs.

42. Mr. McNabb travels around his, and adjacent neighborhoods, on the sidewalks for personal errands. In his travel to the CVS drug store at 1701 K Street, on 18th Street he was unable to use the sidewalk because a person was sleeping across the sidewalk with the person's possessions across the area. Mr. McNabb had to turn completely around and go another direction. McNabb frequently needed to change his routes to get around tent encampments because of the sidewalks being blocked. McNabb now curtails his outside home travels because he feels endangered by the tent encampments, its users, its dogs, and debris. He no longer takes his dog to a dog park to relieve herself due to tent encampments and threats that he sees as being dangerous to his safety. This limits his sunlight exposure which exacerbates his Vitamin D deficiency.

43. Mr. McNabb's travels on sidewalks are impeded from broken glass, vomit, feces, and all kinds of other debris. His travel length and time is extended on the sidewalks so as to avoid tent encampment areas he regards as dangerous.

44. On January 24, 2023, Mr. McNabb travelled on Sacramento City streets to go the UCD Medical Eye Clinic 4860 Y Street to get an appointment to get his broken glasses fixed. He

travelled on his electric scooter to the T Street underpass at 29th to 30th Streets. He was on the northern side of the street. Because of tent encampment obstructions, it took over six minutes for Mr. McNabb to travel one block. A video of the Mr. McNabb's travel on this one block is available at: https://photos.app.goo.gl/tLSGZRcB4pPJ5uGn6.



45. The above video still picture shows Mr. McNabb entering the T Street underpass and having his travel blocked by tent encampments.



46. The above video still picture shows Mr. McNabb four minutes later waiting for a person in the tent encampment to clear a path for him.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23   47. The above video still picture shows Mr. McNabb advancing on the partially cleared

24   sidewalk and being threatened by a large tent encampment dog.

25
26
27
28




48. The above video still picture shows Mr. McNabb, having passed a partially cleared tent encampment, seeing his travel blocked by another tent encampment.



49. The above video still picture shows Mr. McNabb being completely blocked from further travel on the sidewalk by another tent encampment.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



50. The above video still picture shows Mr. McNabb, after exiting the sidewalk because of the tent encampments unmoved blockages, having to travel in the street in the path of oncoming vehicle.



51. The above video still picture shows Mr. McNabb continuing his travel in the street because of his not being able to renter the sidewalk because of the curb.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



52. The above video still picture shows the northern part of the 30th street at T Street. 30th Street experiences heavy fast moving vehicle traffic. If McNabb chose to turn left, he would have again been forced into the street and subjected to fast moving vehicle traffic because of tent encampments on the eastern side of the street. The western side does not have a sidewalk.

53. Mr. McNabb lives alone with no close relatives to assist him. He is vulnerable from

the presence of tent encampments that inhibit his travels, and which put him in jeopardy. As are many of the mobility disabled persons, he is unable to defend himself from hostile dogs and persons using the tent encampments.  His fears are worsened by being forced into the streets and being possibly hit by vehicles. Having his trips extended puts Mr. McNabb at risk of having his electric scooter charge exhausted leaving him stranded and unable to flee from danger.

CLASS ACTION ALLEGATIONS

54. Plaintiffs bring this action individually, and on behalf of all Sacramento City and County residents with mobility disabilities who use or will use the sidewalks in the City of Sacramento and the County of Sacramento, as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

55. Each member of the class is a "qualified person with a disability" and a person with a "disability" pursuant to 42 U.S.C. § 12131(2) and 29 U.S.C. § 794(a). The persons in the class are so numerous that the joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The class consists of about 200,000 of persons with mobility disabilities.

56. Defendant City, and Defendant County, has failed and continues to fail to comply with the ADA and Section 504 in its implementation of administrative methods, policies, procedures, and practices regarding the maintenance and regulation of city sidewalks to remain clear of tent encampments and debris that block and obstruct the sidewalks. Defendant City, and Defendant County, has not adopted and does not enforce appropriate administrative methods, policies, procedures, or practices to ensure compliance with the ADA and Section 504 and that persons with mobility disabilities have equal access to facilities, programs, services, and activities.

57. The violations of the ADA have injured the Plaintiffs and every member of the class and give rise to actionable claims of discrimination under the ADA and Section 504 and,

accordingly, Plaintiffs are entitled to injunctive relief requiring the Defendant City, and

Defendant County, to forthwith remediate and maintain its sidewalks and walkways clear from

tent encampments, debris, or other obstructions.

58. Defendant City, and Defendant County, has acted or refused to act on grounds

generally applicable to the class, thereby making appropriate final injunctive relief with respect to

the entire class.

59. The claims of the Plaintiffs are typical of those of the class in that they arise from the

same course of conduct engaged in by Defendant City, and Defendant County. The relief sought

herein will benefit all class members alike.

60. Plaintiffs will fairly and adequately represent the interests of the class. They have no

interests adverse to the interests of other members of the class.

61. The requirements of Rule 23 of the Federal Rules of Civil Procedure are met regarding

the proposed class, in that, the class is so numerous that it would be impractical to bring all class

members before the court:

There are questions of law and fact which are common to the class;

Plaintiffs' claims for injunctive relief are typical of the claims of the class;

Plaintiffs will fairly and adequately represent common class interests; and

Defendant City, and Defendant County, has acted or refused to act on grounds generally

applicable to the class.

62. The common questions of law and fact, shared by the Plaintiffs and all class members,

include but are not limited to:

Whether Defendant City, and Defendant County, is violating Title II of the ADA, 42

U.S.C. § 12101, *et seq.*, by failing to remediate and maintain sidewalks free from obstructing tent

encampments and debris which renders the Defendant City, and Defendant County, sidewalk

program, service, or activity inaccessible to and unusable by persons with mobility disabilities, and which otherwise discriminates against persons with mobility disabilities;

Whether Defendant City, and Defendant County, is violating Title II of the ADA, 42 U.S.C. § 12101, *et seq.*, by failing to remediate and maintain sidewalks free from obstructing tent encampments and debris which renders facilities in which the Defendant City's, and Defendant County's, programs, services, or activities are made available to the public inaccessible to and unusable by persons with mobility disabilities, and which otherwise discriminates against persons with mobility disabilities;

Whether Defendant City, and Defendant County, is violating Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, by failing to remediate and maintain sidewalks free from obstructing tent encampments and debris which renders the Defendant City's, and Defendant County's, sidewalk program, service, or activity inaccessible to and unusable by persons with mobility disabilities, and which otherwise discriminates against persons with mobility disabilities;

Whether Defendant City, and Defendant County,  is violating Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, by failing to remediate and maintain sidewalks free from obstructing tent encampments and debris which renders facilities in which the Defendant City's, and Defendant County's,  programs, services, or activities are made available to the public inaccessible to and unusable by persons with mobility disabilities, and which otherwise discriminates against persons with mobility disabilities; and Whether Defendant City, and Defendant County, by its actions and omissions alleged in this Complaint, has engaged in a pattern or practice of discriminating against Plaintiffs and other persons with mobility disabilities in violation of applicable federal disability access laws.

First Claim for Relief

Title II of the Americans with Disabilities Act of 1990 42 U.S.C. § 12101 *et seq.*

63. Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

63. Title II of the ADA provides in part: "no qualified individual with a disability, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

64. At all times relevant to this action, the Defendant City, and Defendant County,  was and is a "public entity" within the meaning of Title II of the ADA and provides a sidewalk program, service, or activity to the general public.

65. At all times relevant to this action, Plaintiffs and the members of the class were and are qualified individuals within the meaning of Title II of the ADA and meet the essential eligibility requirements for the receipt of the services, programs, or activities of the City. 42 U.S.C. § 12131. 109.

66. Defendant City, and Defendant County,  is mandated to operate each program, service or activity so that, "when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150; *see also* 28 C.F.R. § 35.149. This requirement applies to all programs, services, and activities that a public entity offers, whether or not they are carried out in facilities that have been constructed or altered since January 26, 1992. Sidewalks are a vital public service or activity under Title II of the ADA. 28 C.F.R. § 35.104; *LA Alliance*, 14 F.4th at 959; *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002). 110.

67. The regulations implementing Title II of the ADA provide that a public entity must

maintain the features of all facilities to be accessible by the ADA. 28 C.F.R. § 35.133. The facilities required to be accessible include sidewalks, walks, and passageways. 28 C.F.R. § 35.104. 111.

68. Due to the blockages and failures to remove the blockages addressed above, Defendant City's, and Defendant County's, sidewalks are not fully, equally, or meaningfully accessible to Plaintiffs and members of the class when viewed in their entirety. Nor are the facilities in which the City's programs, services, and activities made available to the public. Defendant City, and Defendant County, has therefore violated the "program access" obligation applicable to the unmaintained sidewalk facilities.

69. Defendant City's, and Defendant County's, and its agents and employees have violated and continue to violate Title II of the ADA by failing to maintain the features of the City's sidewalks and walkways free of tent encampments, debris, and other obstructions, as is required to be accessible to ensure access to the Defendant City's, and Defendant County's, sidewalks.

70. As a direct and proximate result of the foregoing, Plaintiffs and members of the class have suffered and continue to suffer difficulty, hardship, anxiety, fear, and danger due to Defendant City's, and Defendant County's, failure to remediate and maintain sidewalks and walkways clear of tent encampments and debris throughout Defendant City's, and Defendant County's, sidewalks. These failures have denied and continue to deny Plaintiffs and members of the class the full, equal, and meaningful access to the sidewalks that the ADA requires.

71. Pursuant to 42 U.S.C. §§ 12133 and 12205, Plaintiffs and members of the class are entitled to injunctive relief enjoining Defendant City, and Defendant County, to remediate, clear, and maintain all Defendant City's, and Defendant County's, sidewalks from debris and tent encampments such that, when viewed in their entirety, the Defendant City's, and Defendant

County's, sidewalks are readily accessible and useable by individuals with mobility disabilities in a safe and clean manner; to ensure prompt remedial measures to cure past violations of the Defendant City's, and Defendant County's, duty to maintain clear sidewalks free from debris and tent encampments; to ensure that all Defendant City's, and Defendant County's, sidewalks prospectively comply with all relevant ADA and Rehabilitation Act standards, as well as any other federal and state disability standards, regulations, or rules, whichever is most stringent in its disability access requirements and to fully comply with applicable law, and clear and maintain the City's sidewalks. Plaintiffs are also entitled to reasonable attorneys' fees, expert expenses, and costs incurred in bringing this action.

Second Claim for Relief

Section 504 of the Rehabilitation Act of 1973 29 U.S.C. § 794 *et seq*.

72. Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

73. Section 504 of the Rehabilitation Act of 1973 provides in part: "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . .." 29 U.S.C. § 794(a).

74. Plaintiffs and members of the class are otherwise qualified to participate in the services, programs, or activities that are provided to individuals in the Defendant City, and Defendant County. *See* 29 U.S.C. § 794(b).

75. Defendant City, and Defendant County, is a direct recipient of federal financial assistance sufficient to invoke the coverage of Section 504 and has always received such federal financial assistance relevant to the claims asserted in this Complaint.

76. Defendant City, and Defendant County, and its agents and employees have violated,

and continue to violate, the Rehabilitation Act and the regulations promulgated thereunder by excluding the class members from participation in, and denying the class members the benefits and services of Defendant City's, and Defendant County's, sidewalks for the reasons set forth above. These violations discriminate against the class members based solely by reason of their disability.

77. As a direct and proximate result of the foregoing, Plaintiffs and members of the class suffered and continue to suffer discrimination, difficulty, hardship, anxiety, fear, and danger due to Defendant City's, and Defendant County's, failure to remediate and maintain its sidewalks clear from tent encampments and debris. These failures have denied Plaintiffs and members of the class the full, equal, and meaningful access to the sidewalks that Section 504 requires.

78. Because Defendant City's, and Defendant County's, discriminatory conduct presents a real and immediate threat of current and continuing violations, injunctive relief is an appropriate remedy.

79. Pursuant to 29 U.S.C. § 794(a), Plaintiffs and members of the class are entitled to injunctive relief enjoining Defendant City, and Defendant County, to remediate, clear, and maintain all the Defendant City's, and Defendant County's, sidewalks from debris and tent encampments such that, when viewed in their entirety, the City's sidewalks are readily accessible and useable by individuals with mobility disabilities in a safe and clean manner; to ensure prompt remedial measures to cure past violations of the Defendant City's, and Defendant County's, duty to maintain clear sidewalks free from debris and tent encampments; to ensure that all the Defendant City's, and Defendant County's, sidewalks prospectively comply with all relevant ADA and Rehabilitation Act standards, as well as any other federal and state disability standards, regulations, or rules, whichever is most stringent in its disability access requirements.

80. Plaintiffs are also entitled to reasonable attorneys' fees and costs incurred in bringing

this action.

Third Claim for Relief

California Unruh Civil Rights Act (Cal. Civ. Code §§ 51-53)

81. Plaintiffs re-allege and incorporates herein all previously alleged paragraphs of the Complaint.

82. The Unruh Civil Rights Act ("Unruh Act"), California Civil Code sections 51 through 53, provides that all persons within California are free and equal, and "no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever" within the jurisdiction of California. Cal. Civ. Code § 51(b).

83. Plaintiffs and members of the class are persons with a disability as defined by the Unruh Act. Cal. Civ. Code § 51(e)(1); Cal. Gov't Code § 12926(m).

84 Defendant City, and Defendant County, is a business establishment within the jurisdiction of the state of California and obligated to comply with the provisions of the Unruh Act.

85. A violation of a right of any individual under the ADA also constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f). Defendant City, and Defendant County, has violated the Unruh Act with respect to Plaintiff and members of the class through their violation of the ADA.

86. Defendants' conduct violates the Unruh Act, including Cal. Civ. Code § 51(b), because their policies and practices deny Plaintiff and members of the class the full and equal access and use of Defendant City's, and Defendant County's, sidewalks.

87. Whoever denies, aids, or incites a denial, or makes any discrimination or distinction contrary to the Unruh Act, Civil Code section 51, is liable for each and every offense for the

actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto. Cal. Civ. Code § 51(a).

88. Plaintiffs, and members of the class, is entitled to injunctive relief to remedy Defendant City's, and Defendant County's, discrimination, as well as damages for past harm, attorney's fees, and costs. Cal. Civ. Code §§ 52 and 52(a).

Fourth claim for Relief

California Disabled Persons Act (Cal. Civ. Code §§ 54-55)

89. Plaintiffs re-allege and incorporates herein all previously alleged paragraphs of the Complaint.

90. The California Disabled Persons Act ("CDPA") guarantees individuals with disabilities "full and equal access ... to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided)." Cal. Civ. Code § 54.1(a)(1).

91. Defendant City's, and Defendant County's policies and actions in violation of the CDPA caused, and continue to cause, Plaintiffs, and members of the class, to suffer humiliation, indignity, and emotional distress.

92. Plaintiff and members of the class seeks damages for past harm, attorney's fees, and costs based on Defendant City', and Defendant County's, violation of her rights under the CDPA.

WHEREFORE, Plaintiffs request judgment as follows:

Certification of Plaintiffs' claims as a Class Action, certification of Plaintiffs as Class

Representatives, and certification of Plaintiffs' counsel as Class Counsel;

Issuance of a permanent injunction requiring the Defendant City, and Defendant County, to forthwith undertake remedial measures to mitigate the effects of the Defendant City's, and Defendant County's, past and ongoing violations of Title II of the ADA, Section 504 of the Rehabilitation Act, and the regulations promulgated under those statutes.

At a minimum, the Defendant City's, and Defendant County's, be enjoined to take the following actions:

1. Maintain, and clears all the Defendant City's, and Defendant County's, sidewalks from debris and tent encampments (including buffers of ten feet from each sidewalk to shield class members from threats to their personal safety which they regularly experience when navigating close to tent encampments) such that, when viewed in their entirety, the Defendant City's, and Defendant County's, sidewalks are readily accessible and useable by individuals with mobility disabilities in a safe and clean manner;

2. Prompt remedial measures to cure past violations of the Defendant City's, and Defendant County's, duty to maintain clear sidewalks free from debris and tent encampments;

3. Prospectively comply with all relevant ADA and Rehabilitation Act standards, as well as any other federal and state disability standards, regulations, or rules, whichever is most stringent in its disability access requirements;

4. Reasonable attorneys' fees, expert expenses, and costs, as provided by law;

5. Such other relief as the Court finds just and proper.

DATED: February 7, 2023

s/s Louis Demas
LOUIS DEMAS
Attorney for Plaintiffs