UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Hood, et al., | No. 2:23-cv-00232-KJM-CKD |
| Plaintiffs, | ORDER |
| v. | |
| City of Sacramento, et al., | |
| Defendants. | |

Defendants Sacramento City and Sacramento County move to dismiss plaintiffs' claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act. Defendants also move to strike portions of plaintiffs' complaint. For the reasons below, **the court grants in part defendants' motions to dismiss and motions to strike**.

**I.   BACKGROUND**

Plaintiffs Susan Hood, Chester McNabb, Roland Haley, Connie Manselle and Kenneth Barstow bring this putative class action to enjoin defendants Sacramento City and County. First Am. Compl. (FAC), ECF No. 11. Plaintiffs—all individuals with mobility disabilities under the ADA— allege defendants "fail[ed] to maintain [their] sidewalks clear of debris and tent encampments, which is necessary to make [their] sidewalks readily accessible to people with mobility disabilities." *Id.* ¶ 2. Specifically, plaintiffs allege the following:

- Hood, who is legally blind, alleges it is difficult for her to walk on partially or fully blocked City and County sidewalks because she must travel with her guide dog and her utility cart. At times, she has had to step onto busy roads or side streets to avoid encampments, *Id.* ¶¶ 32, 35–36, 38;
- McNabb, who requires an electric scooter to travel, alleges his travel on City sidewalks has been "impeded" by tent encampments, "broken glass, vomit, feces, and all kinds of other debris," forcing him to change routes or travel on main roads while facing oncoming traffic, *id.* ¶¶ 43, 45–46, 53;
- Haley, who requires a power chair to travel, alleges the encampments have prevented him from traveling to his music store, and he has had to travel on City streets with a vehicle escort to avoid blocked sidewalks, *id.* ¶¶ 57, 69, 71;
- Manselle, who requires a power wheelchair to travel, alleges she has not been able to access City and County sidewalks due to encampments and obstructions, and that on one occasion, a barbell became entangled in her wheelchair, leaving her stuck on the sidewalk until another individual could free her, *id.* ¶¶ 84, 85–88, 91;
- Barstow, who is mobility disabled, alleges "his ability to travel around Sacramento has been made increasingly more difficult as he experiences hazardous situations" because of encampments and other debris, *id.* ¶ 101.

Both the City and County separately move to dismiss the allegations against them. City Mot., ECF No. 15–1; County Mot., ECF No. 14–1. They argue plaintiffs have no Article III standing to bring their claims and cannot state a claim under the ADA and Rehabilitation Act.[1] *See generally* City Mot.; County Mot. Both defendants also move to strike certain portions of the complaint, *see generally* City Mot.; County Mot. The motions are now fully briefed. City Opp'n; County Opp'n; City Reply, ECF No. 21; County Reply, ECF No. 22. The court heard oral arguments on August 11, 2023. Hr'g Mins., ECF No. 26. Louis Demas appeared for

---

[1] Defendants also moved to dismiss plaintiffs' state claims against them. City Mot. at 12; County Mot. at 16. Because plaintiffs have agreed to dismiss their state claims without prejudice, the state claims are **dismissed without prejudice** and the court does not consider these claims here. City Opp'n at 17, ECF No. 19; County Opp'n at 20, ECF No. 20.

2

1  plaintiffs, Dylan Dewit appeared for Sacramento County and Grace Pak appeared for the City of
2  Sacramento.

## II. LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In response, the court begins by assuming the complaint's factual allegations are true, but not its legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court then determines whether those factual allegations, assumed true, "plausibly give rise to an entitlement to relief" under Rule 8. *Id.* at 679. The complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp.*, 550 U.S. at 555. This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* These general rules apply to a defendant's argument that the court lacks jurisdiction to hear a case. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (holding courts should resolve facial attacks on jurisdiction just as they would resolve motions to dismiss under Rule 12(b)(6)).

## III. ARTICLE III STANDING

Defendants first advance several jurisdictional arguments contesting plaintiffs' standing. Article III of the U.S. Constitution limits federal jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. The doctrine of standing is rooted in that limitation. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Standing has three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. A plaintiff must establish her standing "for each claim" and "'each form of relief sought.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). And when, as here, "there are multiple defendants and multiple claims," a plaintiff must have standing "'as to each defendant and each claim.'"

3

*Satchell v. Sonic Notify, Inc.*, 234 F. Supp. 3d 996, 1001 n.2 (N.D. Cal. 2017) (quoting *Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 895 (N.D. Cal. 2015)).

### A. Injury in Fact

To establish an injury in fact, a plaintiff must show a defendant infringed on her legally protected interest in a "concrete and particularized" manner that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (citing *Black's Law Dictionary* 479 (9th ed. 2009)).  In the context of an ADA case, a plaintiff must show she has "encountered at least one barrier that interfered with her access to the particular public facility and whether she intends to return or is deterred from returning to that facility." *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1175 (9th Cir. 2017). "[T]o establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, [a plaintiff] must demonstrate a "real and immediate threat of repeated injury" in the future. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)).

All plaintiffs have alleged encountering barriers to access on City sidewalks. *See, e.g.*, FAC ¶¶ 34–35 (Hood "repeatedly has, and continues to" face difficulty navigating sidewalks in the City of Sacramento), 44–45 (McNabb's travel to medical appointments is "impeded by tent encampments blocking [City] sidewalks"), 69–70 (Haley has been deterred from visiting the Kline music store because of encampments on City sidewalks), 85–87 (Manselle has faced encampments blocking her travel on City sidewalks on multiple occasions), 96–97 (Barstow faces encampments on City sidewalks "several times a week").  The City argues encampments are "transitory in nature" so plaintiffs cannot allege the future harm necessary for injunctive relief. City Mot. at 12.  But plaintiffs have done just that.  Plaintiffs allege that, besides one encampment that no longer exists, the encampments continue to block access to sidewalks, and plaintiffs will continue to be injured by their presence as they continue to travel along these paths with frequency. *See, e.g.*, FAC ¶¶ 45, 77.  In response, the City does not argue the encampments

identified by plaintiffs no longer exist or will no longer exist such that plaintiffs cannot demonstrate a threat of injury. *Chapman*, 631 F.3d at 946.

At hearing, plaintiffs conceded Haley and Barstow do not allege they have encountered encampments or other barriers on County sidewalks, and the court finds McNabb does not make these allegations either. Hr'g Mins.; *see also* FAC ¶¶ 41–56, 68–81, 96–106. At hearing, the County argued Manselle has not alleged she encountered barriers on County sidewalks because she includes only one photo, taken from an automobile, of an encampment she says is on her "shopping travel route at Gerber Road." Hr'g Mins.; FAC ¶ 93. The County argued she does not expressly specify she has been obstructed by this encampment, so she does not have standing against it. Hr'g Mins. However, Manselle's allegations, taken together, put the County on notice that she was obstructed by the encampment in the photo. Manselle alleges her ability to travel has been "severely impacted" and she continues to be deterred from traveling because the encampment is located on her regularly traveled route. FAC ¶ 93; *Bell Atl. Corp.*, 550 U.S. at 555. Because Hood and Manselle allege they encountered encampments and barriers while traveling on County sidewalks, they have established a concrete injury. FAC ¶¶ 35, 38, 91–93. However, **the court dismisses McNabb, Haley and Barstow's claims against the County with leave to amend**.

### B. Causation

To establish causation, a plaintiff must draw a fairly traceable causal chain between her injury and defendant's conduct, unbroken by the independent actions of some third party. *Ass'n of Pub. Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 953 (9th Cir. 2013). "[A] causal chain does not fail simply because it has several links, provided those links are not hypothetical or tenuous and remain plausible." *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) (citations, quotations, and brackets omitted). "In cases where a chain of causation 'involves numerous third parties' whose 'independent decisions' collectively have a 'significant effect' on plaintiff[']s injuries, the Supreme Court and [the Ninth Circuit] have found the causal chain too weak to support standing at the pleading stage." *Maya v. Centex*

*Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (quoting *Allen v. Wright*, 468 U.S. 737, 759 (1984), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).

For example, in *Allen*, the Supreme Court held parents of African American students did not have standing to sue the Internal Revenue Service (IRS) for not denying tax-exempt status to discriminatory private schools. 468 U.S. 737. In relevant part, the Court held the causal chain between the IRS and school discrimination was too tenuous: parents of white students would make independent decisions regarding where to send their children to school and those decisions would have an unrelated but important impact on school segregation, the injury alleged by plaintiffs. *Id.*

Just as in *Allen*, defendants here argue plaintiffs cannot establish causation because unhoused individuals populating encampments on sidewalks are third parties that break the chain of causation. City Mot. at 12–13; County Mot. at 12. But *Allen* is distinguishable from the facts of this case: there, parents could make autonomous decisions about their children's schooling regardless of decisions made by the IRS. Here plaintiffs allege unhoused individuals make decisions to set up and remain housed in sidewalk encampments only because the city permits them to do so. FAC ¶ 2. It is these encampments that cause plaintiffs' alleged injuries. As alleged, the court finds a causal chain between defendants' actions and plaintiffs' injuries.

**C.  Redressability**

Finally, to establish standing, a plaintiff "must show a 'substantial likelihood' that the relief sought would redress the injury." *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (quoting *Johnson v. Stuart*, 702 F.2d 193, 196 (9th Cir. 1983)). At the motion to dismiss stage, "a court's obligation to take a plaintiff at its word . . . in connection with Article III standing issues is primarily directed at the injury in fact and causation issues, not redressability." *Levine v. Vilsack*, 587 F.3d 986, 996–97 (9th Cir. 2009) (citing *Lujan*, 504 U.S. at 561).

The City argues plaintiffs cannot plausibly plead redressability because the proposed injunction would compel it to violate the constitutional rights of unhoused individuals, as proscribed in *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019) and *Lavan v. City of Los Angeles*, 693 F.3rd 1022 (9th Cir. 2012). City Mot. at 13. But neither Ninth Circuit decision

restricts plaintiffs' requested remedy.  Although *Martin* held governments cannot impose criminal penalties on unhoused populations for "sitting, sleeping, or lying outside on public property" without violating individuals' Eighth Amendment rights, 920 F.3d at 616, the injunction requested here would not mandate the government impose criminal penalties on unhoused individuals.  Similarly, *Lavan* held police departments cannot "seiz[e] and destroy[]" the property of unhoused individuals without violating their Fourth and Fourteenth Amendment rights, 693 F.3rd at 1030, but the injunction requested here would not require defendants to seize or destroy property.[2]

The County argues plaintiffs' requested outcome would not redress their injuries because it would be impossible for the County to comply and "ensure that all sidewalks are free of any and all debris at all times."  County Mot. at 12–13.  But a "district court is not bound by [a plaintiff's] proposal, and may enter any injunction it deems appropriate, so long as the injunction is 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'"  *Kirola*, 860 F.3d at 1176 (9th Cir. 2017) (quoting *United States v. AMC Entm't, Inc.*, 549 F.3d 760, 775 (9th Cir. 2008)).  If plaintiffs prevail, the court need not issue their requested injunction and can instead fashion an injunction with language taking account of defendant's concerns.

**In sum, plaintiffs have constitutional standing to bring this suit against the City. Plaintiffs McNabb, Haley and Barstow's claims against the County are dismissed with leave to amend for lack of standing.**

---

[2] As part of its standing argument, the City also makes a conclusory argument that this court should "refrain[] from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances . . . most appropriately addressed in the representative branches.'"  City Mot. at 13 (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 747–75 (1982)).  But plaintiffs here do not bring a generalized grievance.  They allege injury due in part to specific mobility disabilities not faced by the population at large.  Additionally, the Supreme Court has recently reconfirmed "a federal court's obligation to hear and decide cases within its jurisdiction is 'virtually unflagging.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (internal citations omitted).  The court thus declines to shirk its obligation to hear this case.

## IV. MOTIONS TO DISMISS

Title II of the ADA and Section 504 of the Rehabilitation Act prohibit public entities from discriminating against people with disabilities by denying them access to or participation in those entities' benefits, services and programs. *See* ADA Title II, 42 U.S.C. § 12132; 29 U.S.C. § 794. To allege a violation under Title II of the ADA, "a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (internal citations and emphasis omitted). "Similarly, under Section 504 of the Rehabilitation Act, a plaintiff must show: (1) he is an 'individual with a disability'; (2) he is 'otherwise qualified' to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Id.* (quoting 29 U.S.C. § 794). Courts examine claims under these statutes together. *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002) ("We examine cases construing claims under the ADA, as well as section 504 of the Rehabilitation Act, because there is no significant difference in the analysis of rights and obligations created by the two Acts" (citation omitted)). Here, the parties do not dispute plaintiffs are qualified individuals with disabilities and sidewalks are a public service provided by defendants, who are public entities. *See generally* City Mot.; County Mot. Instead, defendants argue 1) plaintiffs do not allege they were denied access to defendants' sidewalk systems in their entireties, City Mot. at 17; County Mot. at 16; and 2) plaintiffs cannot establish they were denied access to sidewalks solely by reason of their disabilities, City Mot. 15–16; County Mot. at 19. The court will examine each argument in turn.

### A. Accessible Services

First, a public entity must "operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). Defendants argue plaintiffs cannot and do not allege the sidewalk systems, when viewed in their entireties, are inaccessible. City Mot. at 17; County

8

Mot. at 16. In support, the County relies heavily on the Ninth Circuit opinion in *Kirola v. City & Cnty. of San Francisco*. 860 F.3d 1164. There, plaintiff was an individual with mobility disabilities suing on behalf of herself and a putative class. *Id.* She alleged the San Francisco municipal defendants "systematically failed to comply with" the ADA because they did not maintain access to "public libraries, pools, Recreation and Parks Department ("RecPark") facilities, and pedestrian right-of-way[s]" which made it difficult for wheelchairs to operate. *Id.* at 1168–69. The appellate court affirmed the district court's finding that the plaintiff could not show the City's right of way was "inaccessible or unusable *when viewed* in its entirety": the plaintiff did not "establish inaccessibility at a programmatic level" when experts testified 1,358 ramps were inaccessible out of the "'approximately 2,000 miles of sidewalks, 27,585 street corners, and roughly 7,200 intersections'" in the city. *Id.* at 1183 (quoting *Kirola v. City & Cnty. of San Francisco*, 74 F. Supp. 3d 1187, 1205 (N.D. Cal. 2014), *aff'd in part, rev'd in part*, 860 F.3d 1164 (9th Cir. 2017) (emphasis in original)). Similarly, here, defendants assert the County maintains approximately 2,400 miles of sidewalks, County Mot. at 19, and the City maintains approximately 2,300 miles of sidewalks, City Mot. at 17, but plaintiffs allege they have encountered encampments and other barriers on only a handful of streets, *see generally* FAC.

*Kirola*, unlike the present motion, was decided on the merits. There, the court held the plaintiff did not meet the entirety standard because no class member testified "there were locations in the city that such class member could not reach because of access barriers." 860 F.3d at 1183; *see also Fortyune*, 766 F.3d at 1102 ("Recognizing the broad reach of the ADA, we have held that Title II requires public entities to maintain accessible public sidewalks . . . ."). In contrast here, all but one of the plaintiffs have plausibly alleged they could not access locations within the City and/or County on sidewalks because of encampments and other debris:

Hood, who has Article III standing against both defendants, alleges she was barred from accessing a County sidewalk in Arden Arcade and had to "go through [] planter boxes" and parking lots to access her home. FAC ¶ 38. Hood has alleged she could not access any location within the County. However, as currently pled, while Hood alleges she has become "disoriented" and lost on downtown City sidewalks due to encampments, she has not alleged she could not

reach any specific location because of the encampments. *Id.* ¶¶ 35, 39–40. Hood has not stated a claim against the City.

McNabb, who has Article III standing against the City, alleges he was forced to travel on his motorized scooter to an Eye Clinic on Y Street on a main road with oncoming traffic because encampments blocked the City sidewalks. *Id.* ¶¶ 47–55.

Haley, who has Article III standing against the City, alleges he has been unable to visit the Kline music store on Sutterville Road on his power wheelchair because encampments have blocked sidewalk access, and his only remaining path to the store would include travel on a dirt road. *Id.* ¶¶ 66, 69. Haley also alleges encampments completely blocked the sidewalk on I street such that he had to operate his wheelchair on the main road. *Id.* ¶ 71. Lastly, he alleges his travels to his medical appointments at the Kaiser downtown offices and to the grocery store have "regularly been obstructed" by encampments and his travel has been "greatly curtailed" due to his encounters with these obstructions. *Id.* ¶¶ 76-78.

Manselle, who has Article III standing against both defendants, alleges that, in March 2023, while traveling to an unnamed store, her power wheelchair became "entangled on a very large and heavy barbell" on a City sidewalk and she "could not free her chair from the barbell" and had to wait for another individual to assist her. *Id.* ¶ 88. Because she alleges she was impeded from going to the store, she plausibly alleges a claim against the City. She also alleges she cannot access shops on Gerber Road and Power Inn Road on County sidewalks and at times, due to "difficulty on the sidewalks due to encampments" she is forced into travelling on the main road along with "fast-moving [vehicle] traffic." *Id.* ¶ 91 ("Manselle's ability to travel to locations in Sacramento County . . . has been severely impacted."). Thus, she has also plausibly pleaded a claim against the County.

The one plaintiff who does not plausibly allege he was barred from accessing locations within the City is Barstow. Instead, Barstow merely alleges he has "encounter[ed] sidewalk obstructions" and has found these obstructions difficult to navigate. *See id.* ¶¶ 94–106.

Construing the factual allegations in the light most favorable to them, all plaintiffs but Barstow have plausibly alleged defendants' sidewalks are systematically unavailable to them

because they cannot access specific destinations within the City and/or County.  Although Hood alleges she has had difficulty navigating City sidewalks, she has not alleged the sidewalks are unavailable to her.  *See, e.g.*, FAC ¶ 39.  The court **grants the City's motion to dismiss and dismisses Hood's and Barstow's claims against it with leave to amend.**

### B.      Exclusion Based on Disability

"[A] plaintiff proceeding under Title II of the ADA must, similar to a Section 504 plaintiff, prove that the exclusion from participation in the program was 'solely by reason of disability.'"  *Weinreich*, 114 F.3d at 978 (quoting *Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996)).  Here, defendants argue the encampments and debris at issue "affect[] the entire community at large" so plaintiffs cannot allege any exclusion was by reason of their disabilities.  City Mot. at 16; *see also* County Mot. at 19.

But a plaintiff may base a disability discrimination claim "on 'one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation.'"  *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) (quoting *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016)).  "[F]acially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced."  *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).  "To assert a disparate impact claim, a plaintiff must allege that a facially neutral government policy or practice has the 'effect of denying meaningful access to public services' to people with disabilities."  *Payan*, 11 F.4th at 738 (quoting *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013)).  Here, plaintiffs have alleged just that: The government's policy of allowing encampments and debris on sidewalks has the effect of denying plaintiffs access to those sidewalks, even though the policy applies to all individuals.  *See, e.g.*, FAC ¶ 36 (Hood needs "more space" on sidewalks because she must walk with her guide dog by her side"), ¶¶ 47–54 (McNabb had to travel with his motorized scooter on the main road because his vehicle could not pass encampments, and he had to remain on the street after passing the encampments because the curb prevented him from reentering the sidewalk), ¶ 74 (Haley, who travels on a powered wheelchair with limited battery life and risks being stranded when he has to take lengthy detours

to reach accessible sidewalks), ¶ 88 (Manselle became stuck when her power wheelchair was tangled in a barbell).  It is plausible an able-bodied person would not have experienced any difficulty navigating the sidewalks if placed in plaintiffs' shoes during these situations.  Plaintiffs plausibly allege disparate impact.

The City next attempts to distinguish the facts alleged here from the facts in prior cases allowing similar ADA claims to move forward.  City Reply at 7–8.  For example, the City states plaintiffs' claims are distinguishable from *Munoz v. County of Los Angeles*, because in *Munoz* a plaintiff sued a city for allowing vehicles to park on the sidewalks near his home, but the allegations did not involve unhoused individuals.  558 F. Supp. 3d 845 (C.D. Cal. 2021); City Reply at 7–8.  But while other courts have not ruled on the issue of unhoused individuals and the ADA specifically, courts have "concluded that temporary or removable obstructions, even when placed by third parties, may constitute an ADA violation when those obstructions are systematic or pervasive or persist for an unreasonable amount of time."  *Munoz*, 558 F. Supp. 3d at 849–50 (collecting cases).  Here, debris and encampments owned by third parties plausibly fall into this category.  Additionally, the City argues *Munoz* is distinguishable because, unlike here, plaintiff had complained to the city multiple times before bringing suit.  But plaintiffs are not required to exhaust any administrative remedies, such as lodging a formal complaint with a public entity, before bringing a claim under the ADA.  *See Weinreich*, 114 F.3d at 978 (outlining the requirements to bring an ADA claim).  Hood and Manselle have plausibly alleged claims against the County, and McNabb, Haley and Manselle have plausibly alleged claims against the City.

## V. MOTIONS TO STRIKE

Both the City and County move to strike various portions of the complaint.  Federal Rule of Civil Procedure 12(f) provides "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  The granting of a motion to strike "may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues."  *Taheny v. Wells Fargo Bank, N.A.*, No. 10–2123, 2011 WL 1466944, at *2 (E.D. Cal. Apr. 18, 2011) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527–28 (9th Cir. 1993)).  However, "[m]otions to strike are disfavored and infrequently

granted." *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (citations omitted). "Motions to strike must be viewed in the light most favorable to the nonmoving party; there must be no questions of fact that the claim or defense is insufficient as a matter of law and cannot succeed under any circumstances." *Morrelli v. Corizon Health, Inc.*, No. 18-1395, 2019 WL 918210, at *13 (E.D. Cal. Feb. 25, 2019).

First, the City moves to strike portions of the complaint referencing "commercial activity on public streets through sidewalk vending including, but not limited to, food sales and e-bike scooters rentals." City Mot. at 23; FAC ¶ 143. Specifically, the City moves to strike paragraphs 75 and 80 to 82 of the complaint, which set out Haley's allegations against the City.[3] The City argues these allegations "would require the addition of other necessary parties plaintiffs have not named." City Mot. at 23. At hearing, plaintiffs agreed to strike paragraphs 80 to 82 of the complaint. However, the court finds paragraph 75 is not immaterial but rather adds context and specificity to plaintiffs' claims. **Thus, the court grants in part the City's motion and strikes paragraphs 80 to 82 from the complaint**.

Second, the County moves to strike plaintiffs' class allegations because plaintiffs' claims are not typical of the proposed class, plaintiffs are not adequate representatives and the putative class is not ascertainable. County Mot. 9–11. District courts have generally refused to strike class actions under Rule 12(f) at the pleadings stage and before any discovery has commenced. *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245–46 (C.D. Cal. 2011) (collecting cases). Although the County cites to three cases from the Northern District of California in which courts granted motions to strike at the pleadings stage, *see generally Kay v. Wells Fargo & Co. N.A.*, No. 07-01351, 2007 WL 2141292 (N.D. Cal. July 24, 2007); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010), the court is unpersuaded that the facts of this case are so unique as to warrant a rare granting of a motion to strike. "Piece-meal resolution of issues related to the prerequisites

---

[3] The City also moved to strike portions of plaintiffs' third claim against it. City Mot. at 21. Because plaintiffs have already agreed to dismiss this claim, the court **denies the motion to strike those sections as moot**.

13

for maintaining a class action do not serve the best interest of the court or parties." *In re Jamster Mktg. Litig.*, No. 05CV0819 JM (CAB), 2009 WL 1456632, *7 (S.D. Cal. May 22, 2009). The court **denies the County's motion to strike.**

## VI. CONCLUSION

For the reasons above, the **court grants defendants' motions in part and dismisses McNabb, Haley and Barstow's claims against the County and Hood and Barstow's claims against the City with leave to amend. The court also dismisses plaintiffs' state claims without prejudice to refiling in state court. The court strikes paragraphs 80 to 82 from the complaint. Plaintiffs may file an amended complaint, to the extent possible within the confines of Federal Rule of Civil Procedure 11, within 21 days from the date of this order.**

This order resolves ECF Nos. 14, 15.

IT IS SO ORDERED.

DATED: October 5, 2023.

CHIEF UNITED STATES DISTRICT JUDGE